## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BIEL RAMBANG,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services, Washington, D.C. and JANET NAPOLITANO, Secretary, Department of Homeland Security, Washington, D.C.,<br><br>Defendants. | Civil No. 11-3454 (JRT/JJK)<br><br><br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' COMBINED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT** |

Marc Prokosch, **KARAM & ASSOCIATES**, 2950 Metro Drive, Suite 201, Bloomington, MN 55425, for plaintiff.

Erin E. Brizius, **U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION**, Office of Immigration Litigation District Court Services, P.O. Box. 868 Ben Franklin Station, Washington, DC 20044; Mary J. Madigan, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for defendants.

Plaintiff Biel Rambang, a native and citizen of Sudan, seeks to compel adjudication of his I-485 application for adjustment of status. From 1983 to 1998, Rambang was a member of the Sudan People's Liberation Army ("SPLA"), a group that falls within the definition of a Tier III undesignated terrorist organization as defined in the Immigration and Nationality Act ("INA"). Rambang's application is currently on hold because the Secretary of Homeland Security has yet to decide whether SPLA members are eligible for an exemption to inadmissibility. Defendants have moved to

dismiss for lack of subject matter jurisdiction and failure to state a claim; defendants have also moved in the alternative for summary judgment.  Because the Court concludes that the Secretary's approximately four-year delay in processing Rambang's application is reasonable under the circumstances, the Court will grant defendants' motion for summary judgment.  The motion will be denied in all other respects.

## BACKGROUND

Plaintiff Biel Rambang, a native and citizen of South Sudan, is an asylee and applicant for Lawful Permanent Resident ("LPR") status in the United States.  (Compl. ¶¶ 4, 7, Nov. 28, 2011, Docket No. 1.)  Rambang entered the United States in 1996 as a temporary visitor for pleasure; he applied for and received asylum in 1999.  (Decl. of Julia Wilcox ¶ 3, Feb. 3, 2012, Docket No. 7.)  Rambang's asylum claim indicated that he joined and received training from the SPLA, for which he later served as an armed combatant, officer, and representative.  (*Id.* ¶ 5.)  In June 2006, Rambang applied to adjust his status from asylee to lawful permanent resident.  (*Id.* ¶ 4; Compl. ¶ 7.)  In February 2008, the United States Citizenship and Immigration Service ("USCIS") denied the adjustment application because of Rambang's admitted affiliation with the SPLA, a group that falls within the definition of a Tier III undesignated terrorist organization, as defined in the INA.  (Wilcox. Decl. ¶ 5.)[1]

---

[1] 8 U.S.C. § 1182(a)(3)(B)(i) bars admission of, inter alia, persons that have "engaged in a terrorist activity," which includes being a member of a terrorist organization.

The Consolidated Appropriations Act ("CAA") of 2008, Pub. L. No. 110-161, 121 Stat. 1844 (2007), enabled the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, to exercise discretionary authority to make exceptions to inadmissibility grounds relating to Tier III organizations.  *Panchishak v. U.S. Dep't of Homeland Sec.*, No. 08-6448, 2010 WL 3958772, at *1 (S.D.N.Y. Sept. 29, 2010).  Under the CAA, if a person committed a terrorist act under INA Sec. 212(a)(3)(B) on behalf of a Tier III organization, and that person does not pose a threat to the United States, then that person is eligible for a discretionary exemption to the applicability of INA Sec. 12(a)(3)(B)'s bar.  Accordingly, while providing "material support" to terrorist organizations, including undesignated Tier III entities, renders an alien inadmissible under 8 U.S.C. § 1182(a)(3)(B)(iv)(IV), the Secretary of Homeland Security retains "sole unreviewable discretion" to exempt individuals from that categorical bar under 8 U.S.C. § 1182(d)(3)(B)(i).  As the SPLA is a Tier III organization, this provision is applicable to Rambang.

On March 26, 2008, USCIS issued a policy memorandum directing field officers to reopen and place on hold any applications that had been denied because of terrorist-related inadmissibility for which the Secretary of the Department of Homeland Security may issue an exemption in the future.  (Wilcox Decl. ¶ 6.)  On April 29, 2008, Rambang's application was accordingly reopened and placed on hold.  (*Id.*)  Rambang's application for adjustment of status remains pending.  (*Id.* ¶ 13.)

The Secretary has exempted many groups and individuals from inadmissibility since Rambang's application, though the affected groups did not include the SPLA.  (*Id.*

¶¶ 17-24, 26.)  Indeed, "[b]etween mid-2006 and November 30, 2011, USCIS has granted a total of 14,064 exemptions in cases involving terrorist-related inadmissibility grounds." (*Id.* ¶ 29.)  "Consideration of additional exercises of the Secretary's discretionary exemption authority continues, with a number of exemptions under discussion at the interagency level."  (*Id.* ¶ 25.)

USCIS avers that "[t]he procedure for a new exercise of the Secretary of Homeland Security's discretionary exemption authority . . . is intentionally deliberative." (*Id.* ¶ 27.)

> Various factors, including national security, humanitarian, and foreign policy concerns, must be weighed carefully before a decision is made. There is much interagency discussion on how best to approach and tailor particular exemptions.  The large number of possible exemptions that may be considered, combined with the deliberative nature of the process, causes significant time to pass before adjudications ultimately can take place.

(*Id.*)

According to USCIS, if it were ordered to adjudicate Rambang's application for status adjustment, "the case would likely be denied without prejudice to allow Plaintiff to re-file."  (*Id.* ¶ 31.)  "USCIS intends to adjudicate [Rambang's] application for adjustment of status . . . at such time as an exercise of the discretionary exemption authority that would apply to [Rambang] becomes available, and accompanying formal policy guidance authorizing adjudication is issued."  (*Id.* ¶ 32.)  In the meanwhile, Rambang has been granted a work permit every time he requested one, and has applied for and been granted a travel document on at least seven occasions.  (*Id.* ¶ 33.)

In this action, Rambang asks the Court to "order defendants to timely disseminate regulations to implement exemptions enacted by Congress in 2007 regarding such

inadmissibilities and to timely apply those regulatory guidelines to Plaintiff, and adjudicate his pending application for unlawful permanent residency." (Compl. ¶ 1.) Defendants move to dismiss on the grounds that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted or, in the alternative, for summary judgment on the ground that the hold on Rambang's application has not resulted in an unreasonable delay.

## ANALYSIS

I.   **STANDARDS OF REVIEW**

   A.   **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Uland v. City of Winsted*, 570 F.Supp.2d 1114, 1117 (D. Minn. 2008). It is the plaintiff's burden to establish that jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* If the Court finds that jurisdiction is not present, it must dismiss the matter. Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999).

   B.   **Motion to Dismiss for Failure to State a Claim**

Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The complaint must plead facts that render a defendant's liability plausible – not merely possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In reviewing a complaint on a motion to dismiss the Court takes as true all allegations in the complaint, which it construes in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). It must not, however, give effect to conclusory allegations of law. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

      C.      **Motion for Summary Judgment**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### A.   Motion to Dismiss

Defendants move to dismiss Rambang's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. The Court addresses each potential ground for dismissal in turn, and concludes that subject matter jurisdiction is present and that Rambang's complaint states a claim under the Administrative Procedures Act ("APA").

### 1.   Subject Matter Jurisdiction

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii), which relates to judicial review of discretionary decisions, divests the Court of jurisdiction to consider Rambang's complaint.[2] This Court recently noted the division among district courts on the question

---

[2] To the extent defendants argue that the "sole unreviewable discretion" language of 8 U.S.C. § 1182(d)(3)(B)(i) places the timing of the Secretary's potential future exemption of Rambang from inadmissibility wholly outside the reach of judicial review, the Court disagrees. As Judge Conti aptly stated:

> By its own language, [8 U.S.C. § 1182(d)(3)(B)(i)] only precludes judicial review of exemptions to terrorism-related inadmissibility. Plaintiff does not challenge such an exemption. Plaintiff challenges the express decision of USCIS to place his application on hold. Despite the Government's assertion to the contrary, nothing in the statute governing adjustment of an asylee's status, 8 U.S.C. § 1159(b), or the statute governing exemptions for terrorism-related inadmissibility, 8 U.S.C. § 1182(d)(3)(B)(i), vests the Secretary of Homeland Security or the Attorney General with the discretion to place applications for adjustment on indefinite hold without being subjected to judicial review. That the decision whether or not to make an exemption for a terrorism-related inadmissibility determination is complicated and may involve significant national security concerns does not strip this Court of jurisdiction.

(Footnote continued on next page.)

of whether section 1252(a)(2)(B)(ii) strips courts of jurisdiction to consider claims that the government has unreasonably delayed the disposition of an I-485 application. *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932, 938 (D. Minn. 2011).  The Court squarely addressed the split and found more compelling the reasoning of the "overwhelming majority of district courts," which hold that the provision does **not** "provide[] blanket cover for USCIS' decision to withhold adjudication of [plaintiff's] application indefinitely." *Id.* at 932-33; *see also Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1035 (D. Minn. 2008) ("[T]he Attorney General has discretion over what a decision will be, but not over whether a decision will be made; the Attorney General does not have discretion to refuse to exercise his discretion.").

Defendants have presented no compelling reason to revisit that holding, and the Court declines to do so.[3]  Because the Court has already decided that section 1252(a)(2)(B)(ii) does not divest it of jurisdiction to consider claims of unreasonable delay in processing I-485 applications, defendants' motion to dismiss on that ground will be denied.

---

(Footnote continued.)

*Kahn v. Scharfen*, No. 08-1398, 2009 WL 941574, at *6 (N.D. Cal. Apr. 6, 2009).

[3] The Court has reviewed the recent decisions on which defendants rely, and finds that they offer no persuasive reason to reconsider the finding of jurisdiction in *Al-Rifahe*. *See Camaj v. DHS*, No. 11-12503, slip. op. (E.D. Mich. Feb. 1, 2012) (citing *Seydi v. U.S. Citizenship and Immigration Servs.*, No. 10-10925, 2011 WL 1135553, at *4 (E.D. Mich. Mar. 28, 2011)); *Alghadbawi v. Napolitano*, No. 10-1330, 2011 WL 4390084, at *3-5 (S.D. Ind. Sept. 19, 2011).

In the absence of a bar to jurisdiction, Rambang must demonstrate an affirmative basis for subject matter jurisdiction.[4]  "Although the APA does not provide an independent basis for subject matter jurisdiction, '[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331 [federal question statute] over suits against agencies seeking to enforce provisions of the APA.'" *Al-Rifahe*, 776 F. Supp. 2d at 934 (quoting *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088 (D. Minn. 2008)); *see also Black Hills Inst. of Geological Research v. S.D. Sch. of Mines & Tech.*, 12 F.3d 737, 740 (8th Cir. 1993).  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The reviewing court may "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); *see also id.* § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").  As this Court observed in *Al-Rifahe*, it is well established in this District "that the government has a non-discretionary duty to act on I-485 applications under the APA." *Al-Rifahe*, 776 F. Supp. 2d at 935.  The federal question statute, therefore, supplies subject matter jurisdiction for Rambang's suit to compel action on his I-485 application under the APA.

---

[4] Rambang's complaint alleges that jurisdiction is proper under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Equal Access to Justice Act, 28 U.S.C. § 2412(d); the Administrative Procedures Act (APA), 5 U.S.C. §§ 551 *et seq.* and 701 *et seq.*; and 28 U.S.C. § 1331.  Because the Court finds that jurisdiction exists under 28 U.S.C. § 1331 and the APA, it does not reach the other potential bases of jurisdiction.

### 2.     Failure to State a Claim

Defendants next argue that Rambang's complaint must be dismissed under Rule 12(b)(6) for failure to state a claim. To state a claim for unreasonable delay under the APA, the delay must result in some harm to the plaintiff. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm."). More specifically, defendants argue that the complaint fails to state a claim because Rambang's allegations of harm stemming from the delay are at best speculative, and in fact Rambang actually benefits from the current hold because, were his application to be considered immediately, it would likely be denied.

The complaint alleges that Rambang has suffered harm in the form of being "unable to move forward with his life . . . deprived of his peace of mind . . . and deprived of important benefits, rights, and protections to which he would be entitled as a Lawful Permanent Resident of the United States." (Compl. ¶ 10.) While these allegations of harm are somewhat spare, construing the facts in the light most favorable to Rambang – as it must on defendants' motion – the Court finds that they are sufficient to allege the required harm.[5]

---

[5] *See Islam v. Heinauer*, No. 10-04222, 2011 WL 2066661, at *4 (N.D. Cal. May 25, 2011) (denying government's 12(b)(6) motion where plaintiff alleged that lawful permanent resident status confers many advantages over asylee status including the ability to reside and work permanently in the United States and to travel freely outside the United States); *see also Al Karim v. Holder*, No. 08-00671, 2010 WL 1254840, at *4 (D. Colo. Mar. 29, 2010) (observing in the summary judgment context that the "indefinite nature of the delay in

(Footnote continued on next page.)

Moreover, while defendants aver that denial of Rambang's application is the likely outcome, they do not foreclose the possibility that it could be granted. *See Hassane v. Holder*, 2010 WL 2425993, No. C10-314Z, at *4 (W.D. Wash. June 11, 2010) (concluding that because the government did not foreclose the possibility that plaintiff's I-485 application would be granted "it is possible that [plaintiff] will benefit by having a final adjudication of his application, and dismissal under Rule 12(b)(6) is not appropriate."). More fundamentally, the prejudice Rambang alleges stems from further delay, not from the likely denial of his application. Rambang apparently recognizes the prospect that his application may be denied. If it is denied, Rambang can carry on seeking whatever relief may be available in that event, which may well be an improvement over the current state of affairs. *See AlShamsawi v. Holder*, No. 10-194, 2011 WL 1870284, at *3-4 (D. Utah May 16, 2011). In sum, the Court finds that the complaint sufficiently alleges harm stemming from the delay and that it is plausible that Rambang would benefit from immediate adjudication of his adjustment of status application. Defendants' motion to dismiss for failure to state a claim will therefore be denied.

---

(Footnote continued.)

adjudicating his application has real and not insubstantial effects on plaintiff's life and livelihood . . . . Perhaps most critically, the delay of the final adjudication of plaintiff's application necessarily delays his goal of becoming a U.S. citizen.").

### B.     Motion for Summary Judgment

Defendants finally argue that summary judgment is warranted because there is no genuine dispute of material fact.  The only question before the Court is whether the delay in adjudicating Rambang's application is unreasonable as a matter of law.  *See* 5 U.S.C. § 706(1).  As the cases make plain, whether delay is unreasonable in the context of immigration applications is a highly fact-intensive inquiry.  *See, e.g.*, *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833, at *4-5 (D. Minn. Oct. 9, 2007).  The Court assesses the reasonableness of delay in terms of the so-called TRAC factors.  *Al-Rifah*, 776 F. Supp. 2d at 936 (citing *Telecomms. Research & Action v. Fed. Commc'n Comm'n* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984)).  The factors are:

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in  order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted).

The first and second factors relate to the rule of reason – whether statutory timetable or other indication of pace – governing the agency's decision-making process. *Id.*  The statutes governing an adjustment of status application and authorizing the Secretary's discretion to issue exemptions do not provide a specific time frame within which USCIS must act.  *See* 8 U.S.C. § 1159(b), 1182(d)(3)(B)(i).  USCIS must therefore

process Rambang's application within a reasonable time. *See* 5 U.S.C. §§ 555(b), 706(1); *see also, e.g.*, *Hassane*, 2010 WL 2425993, at *4.

Though Rambang argues that the delay is arbitrary because defendants have given no indication of when his application will be adjudicated, he disputes neither that the application is on hold because of his admitted connection with the SPLA nor that the process of granting terrorism-related exemptions involves sensitive national security questions and time-intensive interagency consultations. Rather, Rambang argues that if defendants truly viewed him as a national security concern, they could have initiated removal proceedings against him or denied his asylum application in the first instance. It is, of course, not up to this Court to determine whether Rambang – or any other applicant for adjustment of status – poses a threat to national security. Indeed, the purpose of the limited scope of judicial review under the APA is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in . . . disagreements which courts lack both expertise and information to resolve." *Norton*, 542 U.S. at 66. Moreover, that none of the Secretary's many discretionary grants of terrorism-related exemptions to inadmissibility has benefitted Rambang says nothing about the reasonableness of the procedure underlying the Secretary's exercise of that discretion. As in *Al-Rifahe*, there appears to be "no reason to disbelieve the government's assertions that the exemption process is a lengthy one requiring 'significant agency consultation.'" *Al-Rifahe*, 776 F. Supp. 2d at 936. Though both time- and labor-intensive, this procedure is governed by a rule of reason, and the second factor therefore favors defendants.

Factors three and five are related, and the Court will consider them together. These factors concern the nature and extent of the interests affected by the delay, particularly human health and welfare. *TRAC*, 750 F.2d at 80.  Defendants point to their interest in complying fully with the CAA and USCIS policy.  This interest must be weighed against the effect of further delay on Rambang's interests, particularly his health and welfare.  Rambang argues that he "experiences insurmountable stress and hardship" because of the delay (Pl.'s Opp'n at 25), and alleges that he is "unable to move forward in life," and "deprive[d] of his peace of mind" and "important benefits, rights, and protections to which he would be entitled as a [LPR]."  (Compl. ¶ 10).  While these allegations of harm are sufficient to state a claim for relief, Rambang offers no evidence demonstrating the extent of this emotional harm or how this harm overwhelms the government's interest.[6]  He has submitted, for example, no declarations in opposition to the government's summary judgment motion.

The Court does not seek to minimize these inconveniences.  Rambang, however, cannot simply rest on allegations in the pleadings to defeat a summary judgment motion.

---

[6] Rambang does not even **allege**, for example, that his abilities to work and travel freely have been significantly impacted by the delay associated with processing his application; indeed, while his application has been pending, Rambang has been eligible to apply for documentation allowing him to travel and accept employment. *See Islam*, 2011 WL 2066661, at *7-8 (observing that plaintiff's ability to work and travel **had** been impacted by delay in processing his application, though ultimately concluding that these factors did not strongly favor either party). At oral argument, Rambang's counsel pointed out that Rambang must pay an additional fee to obtain travel documents to visit his son abroad, and that as a non-LPR, Rambang is unable to petition to bring his son to the United States as an asylee. These concerns do not appear in the complaint, and in any event are insufficient − standing alone − to overwhelm the government's interest.

*See* Fed. R. Civ. P. 56(e)(2).  Moreover, Rambang admits to being a member of SPLA. That fact distinguishes this case from cases involving failure to process name checks, "where courts have concluded that two to four year delays are unreasonable." *Islam*, 2011 WL 2066661, at *8 (collecting authorities).  As noted above, the exemption process in terrorism-related inadmissibility cases is a complex, sensitive, and potentially lengthy one. *See Al-Rifahe*, 776 F. Supp. 2d at 936.  Rambang's evidence – had he submitted any – would therefore have needed to demonstrate substantial harm outweighing the government's interest in completing this delicate process.  In short, the harm that Rambang alleges and argues does not outweigh defendants' weighty interest in carefully completing the time-consuming exemption process prescribed in 8 U.S.C. § 1182(d)(3)(B)(i).  To summarize, in view of the comparatively short period that has elapsed since USCIS re-opened Rambang's application (approximately four years, compared, for example, to the thirteen-year delay this Court found unreasonable in *Al-Rifahe*), the complex process involved in granting such an exemption, and the non-trivial, but hardly grievous prejudice that Rambang alleges to stem from this delay, the Court finds that the third and fifth factors favor defendants.

The fourth *TRAC* factor involves considering the effect of expediting the delayed action on other agency activities. *TRAC*, 750 F.2d at 80.  Defendants argue that compelling adjudication of Rambang's application would truncate any consideration of a potentially beneficial exemption.  Rambang counters that USCIS has impermissibly consigned his application to languish in limbo.  Defendants offer no evidence or argument about why they could not immediately adjudicate Rambang's application, nor

do they provide an estimate of how much longer it may take to make a decision. Defendants simply argue, in effect, that Rambang cannot rush the process.  It is logical to infer that requiring USCIS to adjudicate Rambang's application would require the agency to divert resources from elsewhere.  But absent a more fully developed record on the matter, the Court finds that this factor does not strongly favor either party.

Finally, the sixth factor is inapplicable because Rambang alleges no impropriety lurking behind the agency lassitude.  It is not in dispute that USCIS reopened Rambang's application after its initial denial based on policy guidance issued following Congress' passage of the CAA, and that the application remains on hold because it might benefit from a future exercise of the Secretary's discretionary exemption authority. *Kahn*, 2009 WL 941574, at *9 (finding a March 2008 reopening and hold of an adjustment application to be a good faith effort).

In sum, nearly all the TRAC factors favor defendants.  While the Court urges defendants to adjudicate Rambang's application with due haste in recognition of the not-insubstantial toll that continued delay no doubt has on Rambang's state of mind and ability to move on with his life, it finds that the approximately four-year delay in issuing a final decision is not unreasonable under the circumstances.  It bears emphasis that such a time may one day arrive.  *See, e.g.*, *Al-Rifahe*, 76 F. Supp. 2d at 937-38.  At present, however, defendants' motion for summary judgment will be granted.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Combined Motion to Dismiss and Motion for Summary Judgment [Docket No. 4] is **GRANTED in part** and **DENIED in part**, as follows:

1. The motion for summary judgment is **GRANTED**.

2. The motion is **DENIED** in all other respects.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 27, 2012                  ___s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                                         United States District Judge